LAW OFFICES OF
DONNA R. NEWMAN
ATTORNEY AT LAW
20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007
TEL. 212-229-1516
FAX 212-676-7497
DONNANEWMANLAW@AOL.COM
MEMBER: N.Y. & N.J. BAR

January 5, 2016

Via ECF & Hand Delivery
Hon. Denise L. Cote
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

        Re: *United States v. Arthur Budovsky*
            Docket No. 13 Cr. 368 (DLC)

Dear Judge Cote:

     I write in response to the Government's December 29, 2015 letter identifying for the Court the location on the hard drives (produced to the Defense by the Government in January 2015) of the two Government reports of their analysis of the Google Analytics data now proposed trial exhibits GX 1301A and GX 1301B. *See* Docket Entry 223. Contrary to the Government's claim, the two reports/exhibits were not contained on the hard drives received in January, 2015. *See* Attached email communication.

     We note, the master index provided by the Government, which summarizes the items of discovery on 32 hard drives produced by the Government, contains an entry (referencing a file as item 225) which is described as "SW Google Analytics 2" and as being located on hard drive 3_1. This file the Government in its letter of December 29th states is the file containing GX 1301A and GX 1301B and indicates the file can be found at: search_warrants/google_ search_warrants/google_analytics_ 2ndresponse/GA_

ExportsAnalytics Location 20070601-20130524 by country.pdf and

search_warrants/google_analytics_2ndresponse /GA_Exports/9.10/13/Analytics

www.libertyreserve.com referral traffic 20070601-20130524(4) with hostname sci.liberty.pdf.

*Id.*     However, these items were not contained on the hard drive despite the master index reference and were not produced to the Defense until mid- to-late November of 2015. As such the Government is simply mistaken as to the timing of its production of the two Google Analytics reports.  Moreover, the Government's December 29th letter and its presentation in Court has left Court with the impression that the finding of those reports in January 2015(even if available) was obvious or simple. This is far from accurate.  The Defense was provided with a mountain of discovery, approximately 66.4 terabytes of data, on approximately 32 hard drives, all in an unsearchable format[1].  The existence of those reports, their location or exactly what they contained was far from obvious. It was more like looking for a "needle in a hay stack" amongst the 32 hard drives, and the reports were not there.

Importantly, we were also not informed until mid-December of 2015 that the Google Analytics data on the hard drives was not the raw data which the Government reviewed but only their summary/report of the data they selected from the far greater raw data they viewed. Further, we were not informed until late December that the Government had obtained access to the Liberty Reserve ("L.R.") Goggle Analytics raw data *only* by obtaining from Google Mark Marmilev's password(who opened the account in his own name). The Government, after court on December 29th, emailed the defense counsel a secure website which once opened would

---

[1] Of note, the defense community has drafted a proposed modifications to Rule 16 of the Federal Rule of Criminal Procedure that is to be submitted to the Federal Rule Committee comprising of  members of the Federal Judiciary and members of Congress.  The proposal addresses complex cases such as this where massive discovery is produced to the defense. A new provision to Rule 16 would require the Government to produce the discovery in a searchable format to avoid many of the problems we are experiencing in this case.

reveal a password which would allow the Defense access to the full spectrum of the L.R. Google Analytics raw data.  However, the Government unfortunately failed to provide counsel with the password which counsel needs to open the secure message. We have advised the Government of this issue. Thus, as of today, the defense team does not have the ability to check the Government's summary reports against the raw data or to make use of the information contained therein for the Defense case.

Likewise, inaccurate is the Government's statement to the Court in its December 28th, letter that: "*All* of the raw data in the database [referring to the hard drives] is fully readable and can be reviewed using standard database queries. The data has been available to the defense in this form, again, since January."*Id.* at pg. 2(emphasis in the original); Docket No. 221. The Government repeated the substance of this statement in Court during the December 29, 2015 conference.  The Defense consultant[2], confirmed that the raw data provided in January is NOT fully readable. The Government conceded this in its April 2, 2015 letter to the Defense specifically advising that it would require a forensic expert to enable the Defense to have access to this transactional data-which is massive. Indeed, certain views remain partially locked, as the Government conceded to the Court. The Government's claim that the "locked" views of the SQL views is nothing more than a "red herring" is self-serving and likewise, inaccurate. Our consultant advises that it is necessary to "unlock" the views because the Government has made assumptions regarding what happens in those locked views—assumptions which may or may not be true.  According to the Defense consultant, the information contained in the "views" is necessary to test the very data upon which the Government relies to draw its conclusions. To

---

[2]Due to our inability to confer with our expert(due to time zone differences)regarding the Government's allegations contained in their letter of December 28, 2015 prior to the Court conference in the morning of December 29, 2015, the defense was unable to present the input of our consultant regarding the claims made by the Government in their letter.

date the Defense consultant has expended over 123 hours "unlocking" the SQL database since November. Thus, it is not the quick and easy process as the Government proffered to Court during the December 29th conference. In addition to the data itself, there are further issues with the way the Government has provided us with the results of their queries of the data. We have requested from the Government the queries they used to reach their conclusions so that we may understand the data we are looking at and understand their results(the data comprises over 500 Government exhibits and thousands and thousands of pages). We requested this information on December 31, 2015 and await the Government's response.

Further, despite having the hard drives since January 2015, Mr. Budovsky still has *not* had access to the transactional data at all. As stated above, the transactional data on the drives is not readable.  As we advised the Court, the Defense consultant to enable Mr. Budovsky to have access to the transactional data and the L.R. logs, has created a virtual machine for him and downloaded the transactional data onto a hard drive. That process was completed, the hard drive delivered to the Government earlier this week for delivery to Mr. Budovsky at the Metropolitan Correction Center("MCC")(only the Government can deliver a hard drive to the Metropolitan Correction Center). The Government will now need to download software onto Mr. Budovsky's laptop to enable him to view the transactional data and L.R. logs.  The plan is for the defense counsel and Special Agent Tate Jarrow to go to the jail to meet with Mr. Budovsky and have Agent Jarrow load the software onto Mr. Budovsky's laptop.  At the same time we are all with Mr. Budovsky, Agent Jarrow will load 3 different Skype viewer software to enable Mr. Budovsky to review the Skype chats which are contained on the hard drives. These chats can not be viewed without this software and this software is not available to Mr. Budovsky[3].  The

---

[3]The Government will introduce only a small select number of these chats. The Defense search of its searchable data base returns 70,000 Skype chats. While this search can be more selective to reduce the number returned, nonetheless, Mr. Budovsky, wants to review as many

Government is attempting to set this up for tomorrow. Besides not having the ability to review the transactional data and the Skype chats, there remains other items on the hard drives that Mr. Budovsky can not access. Yesterday, we learned and informed the Government that Mr. Budovsky requires software to view the PENs Register on drive 1 and the files located on drive 2-2.

Finally, the Government misspoke in Court when it indicated that the Defense chose not to concentrate on the transactional data. Nothing could be further from the truth and we have never advised either the Government or the Court that the transactional data was set aside in favor of concentrating on other portions of the discovery. Rather the Defense took pains to provide Catalyst with all of the discovery and all discovery demands and the Government's response of April 2,2015. We had believed, as we stated in Court, that the transactional data had been uploaded to the data platform and was available in late August/early September. It was upon our searching the database that we realized the transactional data was not uploaded on the platform. We quickly sought to determine how the error occurred and how quickly the transactional data could be uploaded. As we have informed the Court, the process of uploading the database took time and actually it was not until December 8th with some guidance from Government that the transactional data was then available for counsel to begin to review-with the above explained caveat. As noted, Mr. Budovsky still awaits access to this data.

Very truly yours,

_____/s/_____
Donna R. Newman
_____/s/_____
John Kaley
cc: All counsel of record by ECF and email

---

chats as are relevant and material to his defense. He has not had the opportunity thus far, for the reasons stated above.