```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ X
 ARTHUR BUDOVSKY,                           :
                                            :         18CV7514(DLC)
                        Movant,             :
          -v-                               :         13CR368-4(DLC)
                                            :
 UNITED STATES OF AMERICA,                  :         OPINION AND ORDER
                                            :
                        Respondent.         :
------------------------------------------ X
```

APPEARANCES:

For the Government:
Christine Ingrid Magdo
United States Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007

For the defendant:
Marshall Aron Mintz
Mintz & Oppenheim, LLP
260 Madison Avenue, 18th Flr.
New York, NY 10016

DENISE COTE, District Judge:

Arthur Budovsky brings a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, seeking to vacate his conviction following the entry of a plea of guilty. For the following reasons, the petition is denied.

## **Background**

On May 20, 2013, Budovsky was indicted in a Superseding Indictment in three counts, which charged him with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h);

conspiracy to operate an unlicensed money transmission business in violation of 18 U.S.C. § 317; and operation of an unlicensed money transmission business in violation of 18 U.S.C. § 1960. Six other individual defendants were also indicted on the same day for their role in Liberty Reserve, S.A., a business incorporated in Costa Rica that operated one of the world's most popular digital currencies.  Liberty Reserve touted itself as the Internet's largest payment processor and money transfer system.  The Indictment charged that Liberty Reserve was designed to help criminals conduct illegal transactions and launder the proceeds of the crimes, including credit card fraud, identity theft, investment fraud, computer hacking, child pornography, and narcotics trafficking.  Budovsky was a founder, owner and operator of Liberty Reserve.

Budovsky was arrested in Spain on May 24, 2013, and extradited to the United States in October 2014.  All of Budovsky's co-defendants who had been arrested had pleaded guilty before Budovsky's arraignment.

Budovsky was arraigned in the Southern District of New York on October 14.  A trial was scheduled to begin almost a year later, on September 21, 2015.  The date was selected because the defendant needed time to review the massive document production from the Government, which principally consisted of the records of Liberty Reserve and of the defendants' electronic devices.

On November 17, 2014, new counsel was appointed to represent Budovsky. Over the course of the months that followed, a large defense team was assembled. There were six assigned CJA counsel, including one with a specialty as a technology consultant, two with prior experience working with Catalyst, a firm hired by defense counsel to organize, store and host the electronic discovery, and one whose principal responsibility was to conduct database searches and perform legal tasks. The defense team also included a paralegal and investigator. At some point, Budovsky was assisted as well by retained counsel.

Pursuant to defense counsel's request, the Budovsky trial was adjourned on January 30, 2015 to November 2, 2015. On August 14, the trial was adjourned again at defense counsel's request to February 1, 2016.

Several subsequent requests to adjourn the trial were denied. On December 24, 2015, defense counsel again requested an adjournment of the trial, a request which the Government opposed. The Court denied the request at a December 29 conference. The defense renewed the request on January 13, which the Government again opposed. The request was denied at a January 15 conference. An Opinion of January 28, which recites the discovery and trial scheduling issues in detail, rejected the defendant's January 26 request for an adjournment. United

3

States v. Budovsky, No. 13-CR-00368 (DLC), 2016 WL 386133, at *14 (S.D.N.Y. Jan. 28, 2016) ("January 2016 Opinion"). Familiarity with the January 2016 Opinion is assumed; it is incorporated by reference.

The defendant entered his plea of guilty to Count One on January 29, 2016, which was the Friday before the Monday, February 1 trial date. In the parties' plea agreement, they stipulated that Budovsky's guidelines range was 360 months to life imprisonment, but because the statutory maximum sentence on Count One is twenty years, that his guidelines sentence was also twenty years' imprisonment. The agreement included a waiver of appellate rights as to the term of imprisonment. Budovsky reserved, however, the right to assert a claim of ineffective assistance of counsel.

At his allocution, Budovsky explained that he was involved with Liberty Reserve in one capacity or another from 2002 to 2013. He knew that Liberty Reserve was susceptible to abuse by criminals, in particular high yield investment programs run by "fraudsters," and that they would and did use Liberty Reserve. Budovsky knew as well that Liberty Reserve had insufficient anti-money laundering procedures in place to minimize that use. Indeed, he designed features at Liberty Reserve to facilitate the concealment of money laundering. He knew that criminals used Liberty Reserve to conceal their identity and to launder

4

their criminal proceeds and that a percentage of those criminals were in the United States.

Budovsky confirmed that he had had a sufficient opportunity to discuss his case with his attorneys, including any defenses that he might have to the crime charged in Count One. Budovsky assured that Court that he was satisfied with the legal representation his attorneys had provided to him.

On April 1, 2016, the Court received a pro se letter from Budovsky, which the Court addressed at an April 6 conference. Budovsky insisted in the letter that he was not proclaiming his innocence or disputing the information that he provided during his allocution. He explained as well that he had personally processed about 85% of the voluminous discovery as of the date of the letter. He acknowledged that his attorneys had worked hard on his case until about mid-December, but asserted that that had changed in the weeks before his plea of guilty, when they met with the prosecutors and discussed a potential guilty plea with them.

In the course of the letter, Budovsky described the plea negotiations between his attorneys and the Government, implying that his attorneys had engaged in misconduct. At an April 6 conference, the Court created a record regarding those negotiations. The Court found, among other things, that the

5

defendant did not advise the Government of a willingness to plead guilty until January 21, 2016, at the earliest.

In addition to the record created at the April 6 conference, a joint affirmation from three of Budovsky's trial counsel, submitted by the Government in opposition to this petition, also describes some of the circumstances surrounding Budovsky's decision to enter a plea of guilty.  It explains that defense counsel advised Budovsky that in their professional opinion he would "likely" be convicted at trial on all three counts in the Superseding Indictment, that his guidelines would be far in excess of twenty or even thirty years, and he could "very well" be sentenced to thirty years in prison.  They report that Budovsky's retained counsel also advised Budovsky to take the twenty-year plea deal offered by the Government.

An Order of March 7, 2016, required the parties to advise the Court whether there was a need for a <u>Fatico</u> hearing before sentencing.  The Government identified three potential issues for a <u>Fatico</u> hearing.  The defendant took the position at the April 6 conference that no hearing was necessary.

In advance of sentence, defense counsel submitted a document labelled Defense Version of the Offense Conduct.  The Court identified six direct disputes between that document and the version of the offense in the Presentence Report, and issued an order to determine again whether a <u>Fatico</u> hearing was

6

necessary.  At the May 6 sentencing proceeding, defense counsel took the position again that no Fatico hearing was necessary.

Budovsky was sentenced on May 6, 2016 to twenty years' imprisonment.  This was the maximum sentence permitted on Count One; it was also the guidelines sentence for Count One.

Budovsky appealed his conviction.  His attorney on appeal filed an Anders brief.  The conviction was affirmed by summary order on June 28, 2017.

Budovsky filed this timely habeas petition on August 17, 2018.[1]  The Government filed its opposition on December 20.[2]  Budovsky filed a reply memorandum on March 4, 2019.

## **Discussion**

The standard for demonstrating ineffective assistance of counsel is well established.  To prevail on such a claim, a

---

[1] A prisoner has one year from the date on which the judgment of conviction becomes final to file a habeas petition.  28 U.S.C. § 2255(f).  When a prisoner has taken a direct appeal from a judgment of conviction and the court of appeals has affirmed, such judgment becomes final when the time expires for filing a petition for certiorari.  Clay v. United States, 537 U.S. 522, 524-25 (2003); see also Sup. Ct. R. 13 (allowing 90 days from the judgment of a court of appeals for filing a petition for certiorari). Budovsky thus had until September 26, 2018, to file his petition.

[2] An Order of October 10, 2018, granted the Government's request to allow trial counsel for Budovsky to submit an affidavit regarding issues raised in the petition.  Budovsky granted consent to that filing on November 6.

petitioner must show (1) that "defense counsel's performance was objectively unreasonable," and (2) that "the deficient performance prejudiced the defense." Doe v. United States, 915 F.3d 905, 910 (2d Cir. 2019) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. As the Supreme Court explained in Strickland, "[t]he object of an ineffectiveness claim is not to grade counsel's performance." Id. So, "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice that course should be followed." Gen. Waiters v. Lee, 857 F.3d 466, 479 (2d Cir. 2017) (citation omitted).

"[T]o establish prejudice [a defendant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Garner v. Lee, 908 F.3d 845, 871 (2d Cir. 2018) (citation omitted). Where an ineffective assistance claim is brought following entry of a plea of guilty, the defendant must establish that "there is a reasonable probability that, but for the counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Kovacs v.

United States, 744 F.3d 44, 51 (2d Cir. 2014) (citation omitted).

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.

Hill v. Lockhart, 474 U.S. 52, 59 (1985). The assessment of that issue will depend "in large part on a prediction whether the evidence likely would have changed the outcome of a trial." Id.; see also Kovacs, 744 F.3d at 53 (applying a similar rule in the context of counsel's failure to discover a statute of limitations defense).

When the defendant argues that counsel provided ineffective assistance by failing to communicate a formal plea offer, prejudice requires "a reasonable probability [that the defendant] would have accepted the earlier plea offer had [the defendant] been afforded effective assistance of counsel." Kovacs, 744 F.3d at 51 (citation omitted). In addition, the defendant must show "a reasonable probability [that] neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." Id. at 52 (citation omitted).

There are limited circumstances where a presumption of prejudice is appropriate. As the Court explained in United States v. Cronic, 466 U.S. 648 (1984), the right to effective assistance of counsel exists "because of the effect it has on the ability of the accused to receive a fair trial." Id. at 658. Therefore, there are circumstances that are so likely to prejudice the accused, that prejudice may be presumed without the need to litigate whether prejudice was actually suffered. Id. For example, the presumption exists where there is a "complete denial of counsel," and where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Id. at 659. But, "only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." Id. at 662; see also Torres v. Donnelly, 554 F.3d 322, 326 (2d Cir. 2009)(refusing to presume prejudice in the absence of an actual conflict of interest); Tippins v. Walker, 77 F.3d 682, 686-87 (2d Cir. 1996)(counsel slept during significant portions of trial); United States v. Novak, 903 F.2d 883, 890 (2d Cir. 1990) (counsel obtained license fraudulently); United States v. Cancilla, 725 F.2d 867, 870 (2d Cir. 1984) (counsel implicated in defendant's crimes); Solina v. United States, 709 F.2d 160, 167-69 (2d Cir. 1983) ("counsel" never admitted to the bar). This Court has

been unable to locate and the parties have not cited any decision in which this Circuit has presumed prejudice following entry of a plea of guilty.  See Gonzalez v. United States, 722 F.3d 118, 132-34 (2d Cir. 2013) (requiring evidence of counsel's actual performance and likely resulting prejudice in the context of guilty-plea entry).

Before addressing the defendant's contentions regarding his counsel's performance, it should be observed that Budovsky's petition may be denied solely for his failure to identify any prejudice.  He does not identify evidence -- one document or set of documents or any witnesses -- much less any theory, that would have provided him with a viable defense at trial.  This is dispositive.  Having founded Liberty Reserve, Budovsky was well equipped to know its purpose and how it operated, and of course, he knew his own intention in setting it up and operating it.  If there were any viable defense which he could have asserted at trial, he knew of it during the years between his arrest and trial and during the many months he worked with his assigned counsel in America to prepare for trial.  His failure to identify that defense in this petition is fatal.

Nor can it be realistically argued that he was not provided with adequate resources to assist him in his defense and to make sure that the Government's ability to prove its case beyond a reasonable doubt at trial would be strongly contested.  The

majority of the Government's evidence came from Liberty Reserve's own files and Budovsky was well situated to guide his counsel in their examination of those files. The Government's theory of the case was clearly articulated in its speaking Indictment as well as the December 9, 2014 sentencing submission for one of his co-defendants, Mark Marmilev. In that memorandum the Government also provided, over a year before the Budovsky trial date, notice of how it intended to summarize and characterize for the jury the financial transactions conducted by Liberty Reserve.

The Court encouraged defense counsel to obtain the resources it needed to investigate the massive document production made by the Government. Ultimately, the defense team included six attorneys, one paralegal, and one investigator, in addition to the document management firm Catalyst. Budovsky, 2016 WL 386133, at *4. Catalyst created a searchable universal database for the defense.[3] Id.

The defense was also assisted by the Government's approach to discovery. The Government promptly fulfilled its discovery obligations and produced a detailed index of the materials it produced when making that production. Id. at *10. It also promptly responded to every defense request for assistance and

---

[3] The Government did not create a searchable database and did not have access to one.

allowed law enforcement personnel to assist the defense team with technical issues.  Id.

The petition contends that the defendant has no duty to identify prejudice because he was constructively denied counsel by the Court's failure to grant defense counsel sufficient time to prepare for trial.  There is no basis to presume prejudice here.

Budovsky essentially contends in this petition that his counsel was unprepared to proceed to trial, and that the Court's failure to adjourn the trial a third time left him with no choice but to plead guilty.  He points to his counsel's repeated declarations that they needed more time.  In denying the final request for an adjournment, the Court discussed each of the eight reasons his counsel gave for needing more time.  Id.  The Court found at that time that the defense had had an adequate opportunity to prepare for trial and denied the request.  Id. at *13.  Nothing presented in this petition suggests that that analysis was incorrect.  Indeed, Budovsky's inability even today to identify anything from the files of Liberty Reserve that could have assisted in his defense reinforces the correctness of that decision.

Defense counsel's repeated requests for adjournments may best be understood as reflecting their admirable desire to locate some evidence that would be helpful to their client and

to fashion some defense in the face of the Superseding
Indictment's serious charges.  The record here does not suggest
that they were anything other than devoted to their client and
seriously engaged in an effort to represent him well.  But, even
with assistance from a thoroughly engaged and intelligent client
who was intimately familiar with every aspect of Liberty
Reserve, they were unable after months of effort to identify an
effective defense.  That failure does not suggest that they
provided him with less than the constitutionally-mandated level
of competent representation.  After all, even though more than
three years have passed since Budovsky entered his plea, his
petition points to nothing from the Liberty Reserve files or
anywhere else which would have been useful to his defense.  See
Hill, 474 U.S. at 59.


## Conclusion

Budovsky's August 17, 2018 petition for a writ of habeas
corpus is denied.  Because Budovsky has not made a substantial
showing of a denial of a constitutional right, a certificate of
appealability will not issue.  See 28 U.S.C. 2253(c); Matthews
v. United States, 682 F.3d 180, 185 (2d Cir. 2012); Tankleff v.
Senkowski, 135 F.3d 235, 241 (2d Cir. 1998); Rodriquez v.
Scully, 905 F.2d 24, 24 (2d Cir. 1990).  The Court certifies,
pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this

14

Opinion and Order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is hereby directed to close this case.


Dated:   New York, New York
         August 22, 2019

                                    _____
                                            DENISE COTE
                                    United States District Judge